# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| THE REYNOLDS & REYNOLDS, COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 3:14mc00017 |
| vs. | : | District Judge Thomas M. Rose |
| | | Chief Magistrate Judge Sharon L. Ovington |
| JAMES MIKUTA, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  **Introduction**

On September 30, 2014, arbitrator David A. Skidmore, Esq. entered a Final Award against James Mikuta, a former employee of Plaintiff The Reynolds & Reynolds Company. The Final Award granted permanent injunctive relief in Plaintiff's favor, enforcing terms in a covenant not to compete in the parties' written employment agreement.

Plaintiff brings this case under the Federal Arbitration Act, 9 U.S.C. §9, seeking Judgment that confirms the Arbitrator's Final Award.  The case is pending upon Plaintiff's Petition/Motion to Confirm Arbitration Award (Doc. #1), Mikuta's Response in Opposition

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

(Doc. #12), Plaintiff's Reply (Doc. #13), and the record as a whole.

Mikuta contends that this Court lacks subject matter jurisdiction over this matter because diversity of citizenship is lacking and because the amount in controversy does not exceed $75,000.00. Mikuta also maintains that Plaintiff's Petition is premature and, as a result, the parties' dispute is not ripe.

"Because it may have no authority to act, a federal court must determine at the outset whether it has jurisdiction to decide the case." *Moore v. City of Harriman*, 272 F.3d 769, 791 (6th Cir. 2001) (citing *United States v. United Mine Workers of America,* 330 U.S. 258, 291 ... (1947) (courts have jurisdiction to determine their own jurisdiction)).

## II.  Subject Matter Jurisdiction

Plaintiff's Petition asserts that this Court has subject matter jurisdiction in this case because the parties are citizens of different states and because the amount in controversy exceeds $560,000.

Beginning with citizenship, Plaintiff explains that it is an Ohio corporation with its principal place of business in Dayton, Ohio. Plaintiff argues that its Ohio citizenship is diverse from Mikuta's, who resides in Naperville, Illinois. Mikuta disagrees. He contends that he worked for Plaintiff in Illinois and that Plaintiff "maintains an office there as shown in Exhibit A. Therefore, diversity of citizenship is lacking." (Doc. #12, PageID at 98)[2] (emphasis in original; footnote omitted).

---

[2] Remaining citations to page numbers will refer to the PageID number of record.

2

Plaintiff does not assert the existence of a federal question as an independent basis for subject matter jurisdiction.  Additionally, the Federal Arbitration Act (FAA) alone does not create federal question jurisdiction under 28 U.S.C. §1331.  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983); *see Green v. Ameritech Corp.*, 200 F.3d 967, 973 (2000).  Hence, Plaintiff invokes this Court's diversity jurisdiction under to §1332, which provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– citizens of different States ....

28 U.S.C. §1332(a)(1).

Corporate citizenship is created under the §1332(c)(1):  "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business ...."

Plaintiff rests its assertion of the parties' diverse citizenship on the sworn declaration of its Senior Director of Marketing, Charles Havener.  Havener states, "Reynolds is an Ohio corporation with its principal place of business in Dayton, Ohio."  (Doc. #13 at 113).  Havener also states, "James Mikuta is an individual residing in Naperville, Illinois."  (Doc. #13 at 113).

Mikuta does not dispute that Ohio is Plaintiff's state of incorporation or that he resides in Illinois.  *See* Doc. #12 at 97-98, 100.  Is Plaintiff's principal place of business also in Illinois?

"[A] corporation can have only one principal place of business for purposes of establishing its state of citizenship." *Century Bus. Servs., Inc. v. Bryant*, 69 Fed. App'x 306, 313 (6th Cir. 2003) (*Gafford v. General Elec. Co*., 997 F.2d 161 (6th Cir. 1993), abrogated on other grounds, *Hertz Corp. v. Friend*, 559 U.S. 1181 (2010)).  Mikuta asserts that Plaintiff's principal place of business is Illinois because Plaintiff is licensed to do business in Illinois, because he worked for Plaintiff in Illinois, and because Plaintiff maintains an office in Illinois.   (Doc. #12 at 98).

A "nerve-center" test applies to determine a corporation's principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  Under this test, a corporation's "principal place of business" refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Id*., 559 U.S. at 92-93.

> [I]n practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id*., 559 U.S. at 93.

Mikuta's assertions fall short of the conclusion that Plaintiff's nerve center is in Illinois.  He does not assert that Plaintiff's headquarters – the actual center of Plaintiff's direction, control, and coordination – is Illinois.  Neither his employment in Illinois nor Plaintiff's license to conduct business in Illinois nor Plaintiff's office in Illinois are sufficient to show that Plaintiff's headquarters and nerve center are in Illinois.  For these

4

reasons, and because Mikuta has not rebutted Havener's sworn declaration, Plaintiff's principal place of business is in Ohio. *See Reynolds & Reynolds Co. v. Superior Integrated Solutions, Inc.*, 2013 WL 2456093 at *1 (S.D. Ohio June 6, 2013) (Rose, D.J.). Consequently, complete diversity of citizenship between the parties exists. *See Hertz Corp.*, 559 U.S. at 93.

* * *

Plaintiff asserts in its Petition that the amount in controversy in this matter exceeds $560,000 and is therefore far above the $75,000 jurisdictional threshold amount.

Mikuta contends that diversity jurisdiction is lacking because the amount in controversy does not exceed the $75,000 threshold. He reasons that the Final Arbitration Award granted only injunctive relief to Plaintiff and did not grant any monetary award to Plaintiff for damages.

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cleveland Hous. Renewal Proj. v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)[3]). Plaintiff "has the burden of showing that the requirement 'more likely than not' is satisfied." *Id*. (quoting, in part, *Everett*, 460 F.3d at 822).

In the present case, the object of the litigation is the customer list that was at issue

---

[3] (abrogated by statute on other grounds, *United Food & Comm. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 558 (1996).

5

during the arbitration, Plaintiff's exclusive right to retain it, and its use free from interference by Mikuta. The value of that exclusive right is the future lost profits Plaintiff will suffer if Mikuta is permitted to use the customer list in the future. Indeed, "considering [the $75,000-threshold] amount and the 'object of the litigation,' courts do not look merely at the damages or relief to be awarded; they also consider the practical, future economic effects of the outcome of the case." *Waldron & Assc., Inc. v. Loon, LLC*, 2012 WL 1598122 at *4 (N.D. Ohio Apr. 17, 2012) (citing, *e.g., Wright v. Sand Canyon Corp.*, Case No. 5:10cv2188, 2011 WL 1792815 at *2 (N.D. Ohio May 11, 2011)); *see, e.g., Hunt*, 432 U.S. at 347 (The object of the *Hunt* litigation "is the right of the individual Washington apple growers ... to conduct their business affairs in the North Carolina market free from the interference of the challenged statute. The value of that right is measured by the losses that will follow from the statute's enforcement.").

Mikuta argues that Plaintiff has the burden to show the case meets the jurisdictional requirements. (Doc. #12 at 99). Correct. *See Siding and Insulation Co. v. Acuity Mut Ins Co.*, 754 F.3d 367 (6th Cir. 2014). Mikuta further argues that Plaintiff has not met its burden because its asserted amount in controversy – exceeding $560,000 – is speculative. Incorrect.

Plaintiff's Petition states, "The amount in controversy exceeds $560,000." (Doc. #1 at 2). Plaintiff then quotes the following language from a case in the northern District Court in Ohio as the basis for its calculation:

       In determining the "amount in controversy" for an injunction, the Court must look to the "value to the plaintiff of conducting his business or personal affairs free from the activity sought to be enjoined." To establish the value of a non-compete agreement, as is necessary for this case, "the court will usually look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." Courts may also consider the "value of the plaintiff's lost revenue, the value of the future effect of a defendant's reach upon all the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment."

(Doc. #1 at 2) (quoting *Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.*, 410 F. Supp.2d 665, 669 (N.D. Ohio 2005) (internal citations omitted)).

       To demonstrate its lost-future-profit calculation is not speculative, Plaintiff's Reply relies on Havener's declaration. The declaration contains a table setting forth the specific amount of Mikuta's yearly sales from 2008 to 2012. These yearly sales were substantial. For example, in 2012, Mikuta achieved $832,386 in sales; in 2011, $860,887; and in 2010, $974,756. (Doc. #13 at 114).

       Havener's declaration also states that Plaintiff suffered revenue losses of $822,318 as a result of Mikuta's unfair competition. (Doc. #13 at 108, 114). Havener's affidavit, concludes:

    13.    Reynolds' avoidable costs for the products Mikuta sold are approximately 31.7% of revenues generated. Reducing the lost revenues by avoidable costs results in a calculate of lost profits:

          $822,318      lost revenues
          ($260,675)    avoidable costs
          $561,643      lost profits

    14.    Thus, the amount in controversy exceeds $560,000.

7

(Doc. #13 at 114). In this manner, Plaintiff has shown it is more likely true than not that the amount in controversy is not speculative and is well above the $75,000 jurisdictional threshold.

**III.  Ripeness**

Mikuta contends that Plaintiff prematurely filed its Petition to Confirm and, as a result, this matter is not ripe. Relying on 9 U.S.C. §12, Mikuta asserts that he has three months after the arbitrator's award final award was filed – or until December 29, 2014 – to file a motion to vacate, modify, or correct the arbitrator's final award. He therefore concludes that this matter is not ripe for an award of any judgment until after December 29, 2014.

Plaintiff argues that Mikuta offers no authority suggesting that the Court must wait for him to file a motion to vacate before entering Judgment confirming the arbitrator's final award. Plaintiff relies on a sentence in §9 that permits "any party to the arbitration ..." file a Petition to Confirm "at any time within one year ..." after the Arbitrator's Final Award. (Doc. #13 at 110). Plaintiff quotes the full sentence as follows:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title....

*Id.* (quoting 9 U.S.C.A. §9) (Plaintiff's emphasis).

Neither Plaintiff nor Mikuta offers case law supporting their respective positions,

perhaps because any possible tension between the time limitations in sections 9 and 12 is infrequently litigated. Turning, therefore, to the plain language of §12, it provides a statutory avenue by which Mikuta may yet challenge the Arbitrator's Final Award. Mikuta accurately calculates that he has three months, or until December 29, 2014, to file a motion to vacate, modify, or correct the arbitrator's award. *See* 9 U.S.C. §9. Plaintiff's act of filing a timely Petition to Confirm under §9 – by filing it "at any time within one year ..." after the Arbitrator's Final Award – has no impact upon the three-month period §12 provides to Mikuta to file a motion to vacate, modify, or correct the arbitrator's award. This is so because the plain language of §9 does not explicitly require the Court to grant Plaintiff's Petition to Confirm before the three-month period provided by §12 for Mikuta to file a Motion to vacate, modify, or correct the Arbitrator's Final Award. And, by including an exception – "unless the award is vacated, modified, or corrected," – to when the "court must grant ...," confirmation of an arbitrator's final award, §9 suggests that the confirmation should not issue until after the losing party in the arbitration has the full three months to file a motion to vacate, modify, or correct. If, moreover, this Court issues a decision on Plaintiff's Petition before December 29, 2014, it would deprive Mikuta of the time available to him under §12 to file his motion to vacate, modify, or correct.

Plaintiff's concern about its "imminent and ongoing injury" and its resulting need for confirmation of the injunction against Mikuta does not rest on case law or any specific statutory language in FAA or in §§9 or 12, specifically. *See* Doc. #13 at 109-110. Neither

§9 nor §12 addresses the situation of injunctive relief only and, therefore, neither statute alters the three-month time period Mikuta has to file a motion to vacate, modify, or correct the Arbitrator's Final Award.

Furthermore, the time the parties have to file objections to this Report and Recommendations, *see* 29 U.S.C. §636(b)(1), will not expire until one week before Mikuta's December 29, 2014 deadline for filing a motion to vacate, modify, or correct.  Given this, the filing of this Report and Recommendations effectively means that any Judgment confirming the Arbitrator's decision (if warranted) would not occur until, at the earliest, very near the December 29, 2014 deadline for Mikuta to file a motion to vacate, modify, or correct.  From a case-management viewpoint, it would be both just and efficient to wait until after December 29, 2014 to see if Mikuta files a timely motion, thus providing him his full statutory time period allotted by §12.  At that time, and after any further necessary briefing, the parties' dispute over the present ripeness of Plaintiff's Petition will be moot and issue(s) concerning the merits of Plaintiff's Petition will be fully briefed and ready for decision.

### IT IS THEREFORE RECOMMENDED THAT:

1. This Court has subject matter jurisdiction in this case under 28 U.S.C. §1332(a);

2. Mikuta be provided the opportunity to file, on or before December 29, 2014, a motion to vacate, modify, or correct the Arbitrator's Final Award;

3. Plaintiff's Petition/Motion to Confirm Arbitration Award (Doc. #1) remain pending until the December 29, 2014 deadline expires for Mikuta to file a motion to vacate, modify, or correct the Arbitrator's Final Award, and any subsequently needed briefing by the parties; and

10

4.      If Mikuta does not file a motion to vacate, modify, or correct the Arbitrator's Final Award by December 29, 2014, and/or timely Objections to this Report and Recommendations, Plaintiff's Petition/Motion to Confirm Arbitration Award (Doc. #1) be GRANTED.


December 5, 2014

                                    s/Sharon L. Ovington
                              _____
                                    Sharon L. Ovington
                          Chief United States Magistrate Judge

11

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).